CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Law Offices of Donald K. Hufstader
Donald K. Hufstader, Esq (SB#69774(
600 West Santa Ana Blvd., Ste., 955
Santa Ana, CA 92701
TELEPHONE NO. (714) 835.7024          FAX NO. (714)542.7043
ATTORNEY FOR *(Name)*: Hamid Mavani, PhD

**FILED**
LOS ANGELES SUPERIOR COURT
DEC 2 6 2012
JOHN A. CLARKE, CLERK
BY L. MASCORRO, DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS 400 Civic Center Plaza
MAILING ADDRESS
CITY AND ZIP CODE: Pomona, CA91766
BRANCH NAME Pomona Court House South

CASE NAME:
Mavani, PhD. v. Claremont Graduate University, et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: | **KC065318** |

*Items 1–6 below must be completed (see instructions on page 2)*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*:  Two (2)
5. This case [ ] is [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 18, 2012
Donald K. Hufstader, Esq
       (TYPE OR PRINT NAME)                              ▶          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

EXHIBIT

PAGE _____ 4

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice– Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case–Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ–Administrative Mandamus
　Writ–Mandamus on Limited Court Case Matter
　Writ–Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non-harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief From Late Claim
　Other Civil Petition

EXHIBIT ___1___

PAGE ___5___

| SHORT TITLE | CASE NUMBER |
|---|---|
| MAVANI PhD v. CLAREMONT GRADUATE UNIVERSITY, et al | KC065318 |



### CIVIL CASE COVER SHEET ADDENDUM AND
### STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case.

JURY TRIAL? ☑ YES    CLASS ACTION? ☐ YES    LIMITED CASE? ☐ YES    TIME ESTIMATED FOR TRIAL 7    ☐ HOURS/ ☑ DAYS

Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0
Page 1 of 4

EXHIBIT _____ 1

PAGE _____ 6

| SHORT TITLE | MAVANI PhD v. CLAREMONT GRADUATE UNIVERSITY, et al | CASE NUMBER |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☒ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109 Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012 Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1., 2., 3., 5 |
| | | ☐ A6031 Tortious Interference | 1., 2., 3., 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 Quiet Title | 2., 6. |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.0

**EXHIBIT** of 4    1

**PAGE**    7

| SHORT TITLE | MAVANI PhD v. CLAREMONT GRADUATE UNIVERSITY, et al | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (44) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 0. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

EXHIBIT _____ 1

PAGE _____ 8

| SHORT TITLE | CASE NUMBER |
|---|---|
| MAVANI PhD v. CLAREMONT GRADUATE UNIVERSITY, et al | |

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1 ☐2 ☐3 ☐4 ☐5 ☐6 ☐7 ☐8 ☐9 ☐10. | ADDRESS:<br>Claremont Graduate University, School of Religion<br>831 N. Dartmouth Avenue<br>Claremont, California 91711 |
|---|---|
| CITY:<br>Claremont | STATE:<br>CA | ZIP CODE<br>91711 |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Pomona South___ courthouse in the ___East___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq. and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: December 18, 2012

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

EXHIBIT ___1___

PAGE ___9___

HR- 1-4-13

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CLAREMONT GRADUATE UNIVERSITY, and DOES 1 through 25

**FILED**
LOS ANGELES SUPERIOR COURT

DEC 2 6 2012

JOHN A. CLARKE, CLERK

BY L. MASCORRO, DEPUTY

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

HAMID MAVANI, PhD

CASE ASSIGNED FOR ALL PURPOSES TO JUDGE PETER J. MEEKA DEPT. O

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of the State of California<br>for the County of Los Angeles, Pomona Court House South, 400 Civic<br>Center Drive, Pomona, CA 91766 | CASE NUMBER:<br>*(Número del Caso):*<br>KC065318 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Donald K. Hufstader 600 West Santa Ana Blvd., Ste., 955, Santa Ana, CA 92701 Tel. 714.835.7024

| | | |
|---|---|---|
| DATE: DEC 2 6 2012<br>*(Fecha)* | JOHN A. CLARKE Clerk, by<br>*(Secretario)* L. MASCORRO | , Deputy<br>*(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**EXHIBIT** 1

**PAGE** 10

1    Law Offices of Donald K. Hufstader
     Donald K. Hufstader, Esq. (#69774)
2    600 West Santa Ana Boulevard, Suite 955
     Santa Ana, California 92701-4511
3    (714) 835-7024 telephone
     (714) 542-7943 facsimile
4    Email: dkhatty@aol.com

**FILED**
LOS ANGELES SUPERIOR COURT

DEC 26 2012

JOHN A. CLARKE, CLERK

BY L. MASCORRO, DEPUTY

5    Attorney for Plaintiff HAMID MAVANI, PhD

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA

8              FOR THE COUNTY OF LOS ANGELES

10    HAMID MAVANI, PhD.

     CASE NO.   KC065318

11                   Plaintiff,

     Assigned to:
     The Hon.:
12                              Dept.:

13    vs.

     COMPLAINT FOR
     DAMAGES FOR:

15    CLAREMONT GRADUATE UNIVERSITY;
     and DOES 1 through 25, Inclusive,

     1. EMPLOYMENT DISCRIMINATION
        [Government Code §12940(a)]; and

16                                      2. WRONGFUL TERMINATION IN
         VIOLATION OF PUBLIC POLICY.

17                    Defendants.

**CASE ASSIGNED FOR
ALL PURPOSES TO
JUDGE PETER J. MEEKA
DEPT. O**

20         COMES NOW, Plaintiff Hamid Mavani, PhD ("Plaintiff"), and for Plaintiff's causes of

21    action against Defendants, and each of them, alleges as follows:

22                     <u>**GENERAL ALLEGATIONS**</u>

23         1.      At all times material to this complaint, Defendant Claremont Graduate University,

24    hereinafter "Defendant CGU" was, a duly organized private, all-graduate university existing under

25    and by virtue of the laws of the State of California, and is doing business as such in the County of

26    Los Angeles, State of California.

27         2.      Defendants DOES 1-25 are sued under fictitious names pursuant to *C.C.P.* §474.

28    Plaintiff is informed and believes, and on that basis alleges, that each defendant sued under such

1

**EXHIBIT**   3

**PAGE**   11

fictitious names is in some manner responsible for the wrongs and damages as alleged below, and in so acting was functioning as the agent, servant, partner, and/or employee of the named defendants, and each of them, and in doing the actions pled below was acting with the course and scope of his or her authority as such agent, servant, partner, and employee with the permission and consent of the co-defendants, and each of them.

3.       Plaintiff sues fictitious Defendants Does 1-25, inclusive, pursuant to CCP §474 because their names, and/or capacities, and/or facts showing them liable are not presently known. Plaintiff will ask leave of court to amend this complaint to show their true names and/or capacities when they have been ascertained. Unless otherwise indicated, each Defendant is sued as the agent and/or employee of every other Defendant acting, at least in part, within the course and scope of said agency and/or employment, with the knowledge and/or consent of the said Defendants. Plaintiff is informed and believes that the Doe Defendants are California residents.

4.       Plaintiff is, and at all times herein mentioned, was member of the protected class, i.e., on account of his: Religion, and/or National Origin and, as such, he is a member of the class of persons entitled to the protections of the provisions of *Cal. Govt. Code* §§12900 *et seq.* (the "FEHA") which prohibits, *inter alia*, discrimination in employment on the basis of Plaintiff's Religion, and/or National Origin.

5.       Plaintiff was employed by Defendant CGU as an Assistant Professor of Religion on or about July 1, 2005. Throughout Plaintiff's employment with Defendant CGU, Plaintiff performed his job duties in a capable and competent manner.

6.       On or about September 1, 2011, Plaintiff submitted his dossier to Defendant CGU's School of Religion, to review his case for tenure with promotion to Associate Professor.

7.       On or about December 31, 2011, the Nominating Committee of Defendant CGU's School of Religion, consisting of six professors, two of whom were in the previous Appointment, Promotion and Tenure Committee, hereinafter ("APT") unanimously recommend that Plaintiff be promoted to Associate Professor with tenure.

8.       On or about March 1, 2012, Defendant CGU's APT consisting of five professors notified Plaintiff that it had "unanimously decided not to recommend Dr. Mavani's tenure and

EXHIBIT ___3___

PAGE ___12___

promotion at this time and that he should reapply in three (possibly two) years." The APT made a recommendation that was not an option in the Defendant CGU's tenure policy. The APT had no one with expertise in the same field as Plaintiff and has made errors in the past dealing with tenure issues of other candidates. The APT consists of experts in Education, Psychology, Cultural Studies, Business, and Global Health Sciences. Moreover, never in the history of Defendant CGU has a unanimous decision of a Nominating Committee that a candidate be tenured is overturned by a unanimous verdict from the APT on the contrary.

9.   The APT has made a recommendation that is motivated by discrimination on the basis of Plaintiff's religion and/or national origin. The APT chair is Dr. Mary Poplin, PhD (hereinafter Dr. Poplin), a born-again Christian who has made discriminatory remarks against Muslims. Dr. Poplin claims to have had experience of hearing a voice which she believes was God conveying a message to her. The APT recommendation is diametrically opposed to the unanimous opinion of the six-member Nominating Committee who are experts in the field of religion, the majority opinion of the external referees, and the reviewers of Plaintiff's book manuscript. Moreover, its recommendation to Dr. Jacob Adams, PhD (hereinafter Provost Adams) for Plaintiff to reapply in two or three years for a fresh tenure review does not exist in the APT rules.

10.   The APT made factual errors in its letter to Plaintiff: it claims that there were five referee letters or external examiners reports but in actuality there were six; it claimed that two of these reports were "extraordinary negative, the other three 'lukewarm'" but based on the report of the Nominating Committee, "four reviewers recommended promotion with enthusiasm, and without reservation" and there was only one "extraordinarily negative" referee report, which was most likely motivated by religious, sectarian, ideological, gender, and prejudicial considerations. Based on the snippets that were shared with Plaintiff from this negative report by the Nominating Committee and Provost Adams, he surmises that the person is a female Sunni Muslim scholar with a track record of bias and discrimination against Shi'a Muslims. Plaintiff is a Shi'a Muslim. Plaintiff vehemently disagreed with Provost Adams that "the factual errors that he [Plaintiff] points out are immaterial to APT's decision."

11.   The APT appears to be infringing on the academic freedom of Plaintiff when it

EXHIBIT  3

PAGE  13

1  criticized his scholarship for being "relatively conservative, literal and not very original."

2      12.  On or about March 1, 2012, the Chair of the Nominating Committee, Dr. Vincent

3  Wimbush, PhD, wrote to Plaintiff stating: "I was told by Jacob Adams [Provost] today about APT

4  vote on your promotion/tenure. I was shocked by it."

5      13.  On or about March 27, 2012, the Plaintiff wrote to Provost Adams to point out the

6  presence of factual errors, APT making a recommendation that is non-existent in APT rules,

7  prejudice, bigotry, and discrimination in the APT's one page report. The Chair of the APT is born

8  again Christian who in the past has made discriminatory remarks against Muslims.

9      14.  On or about April 22, 2012, Provost Adams denied the APT's recommendation that

10  Plaintiff reapply for tenure in the future and denied Plaintiff tenure.  Provost Adams further

11  compounded the errors of the APT Committee and continued to distort the six external reviewers'

12  reports by providing snippets from them that were primarily negative and/or out of context without

13  stating the final and ultimate recommendation of each of the reviewers. The Nominating Committee

14  had characterized the same reviewers as follows: "Four reviewers recommended promotion with

15  enthusiasm, and without reservation." Provost Adams also mischaracterized the Nominating

16  Committee's recommendation as "not robust" without ever asking the Chair of the Nominating

17  Committee, Dr. Vincent Wimbush, PhD on his Committee's report to get some clarification before

18  characterizing it as not so strong.

19      15.  On or about April 26, 2012, Plaintiff e-mailed to Dr. Tammi Schneider, PhD

20  (hereinafter "Dean Schneider") for her support, empathy and intervention in response to Provost

21  Adams' negative decision, but her reply was that all procedures were followed correctly and thus

22  nothing more could be done. Plaintiff mentioned in his email to Dean Schneider that she can

23  perhaps empathize with his case more than anyone because Dean Schneider had experienced

24  difficulty during her tenure review due to one scathing critique from an external referee and

25  supposed insufficient publications. In her case, after the Nominating Committee submitted its report

26  to APT, the latter asked the Nominating Committee for more clarification on the negative external

27  report and this Committee came to her support and wrote a lengthy letter discrediting the negative

28  report and praising the scholarship of Dean Schneider. In Plaintiff's case, APT did not seek out the

Complaint For Damages Employment Discrimination

EXHIBIT    3

PAGE    14

1  Nominating Committee for clarification, which would have been the logical thing to do before

2  deciding to overturn their unanimous decision because the latter are experts in the field of religion.

3          16.      On or about May 8, 2012, Plaintiff wrote to Provost Adams with a copy to Defendant

4  Freund to reiterate some of the points and request that Plaintiff's objections be presented to the

5  Academic Affairs Committee and the Board of Trustees when presenting Plaintiff's dossier to them

6  for deliberation at the meeting scheduled for May 10-11, 2012.

7          17.      On or about May 9, 2012, President Freund made discriminatory remarks to the

8  Plaintiff. President Freund questioned Plaintiff about incendiary stances of Iranian President,

9  Ahmadinejad, vis a vis Israel, Holocaust and 9-11 (at first Plaintiff thought that she was saying

10 "jihad" [physical or spiritual warfare] but then she clarified that she meant the President of Iran).

11 Plaintiff explained to her that Ahmadinejad is viewed as a demagogue with very limited support

12 from the Iranians and Shi'a Muslims. Plus, Plaintiff made it clear to her that he finds Ahmadinejad's

13 stance revolting and repulsive. As a matter of fact, Plaintiff pointed out to President Freund that he

14 has been banned from Iran since December 2011 because of speaking out against the regime's

15 human rights violations. In addition, Plaintiff clarified that he was not an Iranian, but his wife was

16 born in Iran.

17          18.      On or about May 11, 2012, Provost Adams wrote to the Plaintiff stating: "I pulled

18 your tenure case off the Academic Affairs agenda Thursday to investigate the issues you raised. Give

19 me a phone number where you can be reached Saturday afternoon, and I'll call you after graduation

20 to explain what will happen next."

21          19.      On or about May 14, 2012, Provost Adams along with Dean Schneider visited the

22 Plaintiff at his office and informed Plaintiff that Provost Adams will try to expedite the process and

23 have a response ready for presentation at the Board of Trustees meeting at the end of June 2012.

24          20.      On or about June 18, 2012, Provost Adams wrote: "We are all in now on budget work

25 in preparation for the late June trustee meeting. As soon as that's over, we'll return to your tenure

26 case and resolve it as quickly as possible. I'll keep you apprised of developments as they occur."

27          21.      On or about July 3, 2012, Western Association of Schools and Colleges (WASC)

28 reprimanded Defendant CGU for failing to promote diversity: "The team was 'disappointed' by the

EXHIBIT   3

PAGE   15

1   low numbers of under-represented faculty, staff and students, the lack of compelling evidence to

2   show that CGU was "utilizing data to enhance its community and improve the environment for

3   under-represented and under-served students and faculty;" and the approach of current school

4   diversity plans which "read as reports or commentary" on the status quo and provided little in the way

5   of "alternatives or next steps.'"

6          22.    On or about July 17, 2012, Dean Schneider wrote to Plaintiff: "Seriously, it must be

7   horrible [having to wait for so long to get a response from the Provost] and I have been bugging him

8   about it but the realignment thing kept taking over everything else. I will try my best to get at least

9   an idea of when you will know something!" and on the same day, Dean Schneider wrote: "That is

10  precisely one of the things I am going to stress; it is too awful to be waiting this long for you. I will

11  let you know if I learn anything."

12         23.    In or about the middle of July 2012, Provost Adams made discriminatory remarks to

13  Plaintiff. Provost Adams inquired from Plaintiff on the vitriol coming out of Iranian president

14  Ahmadinejad against Israel and his denial of the Holocaust. Provost Adams thought that Plaintiff

15  was Iranian (Plaintiff's wife is from Iran but Plaintiff's origin goes back to India and he was born

16  in Uganda, East Africa) as Plaintiff travels frequently to that country for his research and writes on

17  it. Plaintiff further explained to Provost Adams that Ahmadinejad is not representative of Iranians

18  or Shi'a Muslims because the majority of Iranians detest him, and also the theocratic and brutal

19  regime of Iran. Plaintiff made it clear to Provost Adams that Plaintiff in not an Iranian and totally

20  dissociates from these inhumane and ludicrous statements of the Iranian president. As a matter of

21  fact, Plaintiff told Provost Adams that Plaintiff had been banned from Iran since December 2011,

22  because of his critical remarks  about  the regime's human right violations after the 2009

23  Presidential election. Similar questions about Ahmadinejad and Israel were asked of Plaintiff by

24  President Freund. That means Provost Adams must have discussed this matter with President

25  Freund and it further establishes his erroneous opinion about Plaintiff being the supporter of the

26  Iranian regime and by deduction against Israel  Both these assertions are wrong since Plaintiff's

27  scholarship is consistently critical of Iranian religious leadership  Naturally, if Iranians are bad, then

28  for this administration the Shi'a Muslims have to be bad equally. Circumstantial evidence clearly

EXHIBIT   3

PAGE   16

supports that Provost Adams must have made up his mind about Plaintiff being an Iranian and or
sympathizer of the Iranian regime because the Plaintiff is a Shi'a Muslim = Anti-Israel and
Holocaust denier = undesirable faculty for tenure.

24.    Provost Adams also inquired from Plaintiff on the causes of the intra-Muslim
sectarian strife between the Sunni and the Shi'a Muslims. Plaintiff explained to Provost Adams that
it had more to do with politics, demagoguery, and power dynamics than the faith, i.e., Muslims are
not inherently prone to violence and shedding of blood. It was clear that Provost Adams was
harboring some very negative stereotypes about Muslims in general and Iranians in particular.

25.    In or about the middle of July 2012, Provost Adams pointed out to Plaintiff that he
would have the tenure issue resolved by the end of July or beginning of August 2012, at the latest.

26.    The Dean of Defendant CGU's School of Religion, Dean Schneider, also believed
that Provost Adams would render a judgment on the tenure issue by the end of July.   Dean
Schneider wrote to Plaintiff on July 24, 2012 stating: "When I spoke with him [Provost] earlier I
was under the impression that he would have some kind of a response before the end of July."

27.    On or about August 7, 2012, the former Chair of the APT, Dr. Michael Hogg, PhD
(Hereinafter "Dr. Hogg") admits that he did not know what constituted excellence in scholarship in
Plaintiff's field. Dr. Hogg wrote stating: "I am a psychologist and the publishing practices in the
behavioral sciences are different to the social sciences and arts/humanities, so ultimately be advised
by people in your discipline. In BhvSciteh expectation is that a competitive graduate (just with newly
minted PhD) will have 7 or 8 publications among which are first authored pubs and top rank jnl pubs
(books come later, if at all, in one's career) - but some of my students with 10 or 12 excellent pubs
are having a hard time landing a R1 academic position."

28.    On or about August 18, 2012, Provost Adams wrote stating: "I'm working things
through with APT. Should have it wrapped up before start of school [September 3, 2012]."

29.    On or about September 3, 2012, Plaintiff wrote to Provost Adams asking for an
update but there was no response from him for three days so Plaintiff approached Dean Schneider,
to obtain this information from Provost Adams.

30.    On or about September 5, 2012, Dean Schneider wrote to Plaintiff after talking with

EXHIBIT    3

PAGE    17

Provost Adams stating: "I don't even know what to suggest. I have no idea what he is doing right now other than I am under the impression that he is hoping to have something to take to the board when they meet later this month. It has been an awfully long time and my guess is that making an appointment to meet with him cannot hurt and maybe he can give you some sense of what is happening or what the plan is. He was very vague and just mentioned the board meeting to me when I last asked (I think we met yesterday)."

31.     On or about September 5, 2012, Plaintiff sought a meeting with Provost Adams.

32.     On or about September 6, 2012, Plaintiff had a meeting with Provost Adams and he assured Plaintiff that Plaintiff's case is uppermost on his mind and has carried a top priority, however, he needed to obtain some clarification from the Trustees at their meeting on September 20-21, 2012 before he knows what the next steps would be. Provost Adams was vague about the next steps and gave no further details. The consistent pattern of vagueness, delay, and postponement of the decision-making date for about six and a half months altogether has been a source of great torment, anguish, strain, and anxiety upon the Plaintiff, his wife, and his two young children.

33.     On about September 11, 2012, Dr. Henry Kripps, PhD, one of the APT Committee members wrote to Plaintiff in an e-mail that: "it's good to have you [Plaintiff] in the School [of Religion]" although he had voted in favor of postponing Plaintiff's tenure-review by two or three years, at the APT meeting on February 2, 2012. An option that does not exist in the APT rules.

34.     On or about September 17, 2012, three days before the Board of Trustees meeting, Provost Adams requested from Plaintiff a copy of Plaintiff's book contract with Routledge Press and Plaintiff's revised publication list.

35.     On or about September 19, 2012, one day before the Board of Trustees meeting, Provost Adams called the editor of State University of New York (SUNY), Nancy Ellegate, without informing Plaintiff and apparently on a scouting mission to find negative information about Plaintiff since Provost Adams already had the Plaintiff's book contract with SUNY.

36.     On or about September 21, 2012, Provost Adams paid a visit to the Plaintiff's office and informed him that the Academic Affairs Committee and the Board of Trustees ratified his and the President's recommendation of tenure denial. As such, the Plaintiff's term at Defendant CGU

Complaint For Damages Employment Discrimination

EXHIBIT _____3_____

PAGE _____18_____

1  would end on June 30, 2013 giving him only nine months to look for another employment instead

2  of at least one year, which is the norm. Neither Dean Schneider, nor Plaintiff, were aware of Provost

3  Adams' intention to present the Plaintiff's dossier to the Board of Trustees for ratification

4      37.     On or about September 21, 2012, Provost Adams discriminated against Plaintiff who

5  is a practicing  Shi'a Muslim by categorically telling Plaintiff that he would be a good fit for a

6  Seminary but not for a University; and, as such, he had spoken in the morning with the Dean of the

7  Claremont School of Theology, Philip Clayton, PhD, to consider the Plaintiff for employment in the

8  seminary program to train Muslim clergy

9      38.     Defendant CGU has a prior case of discrimination in 1992, against a black male

10  professor, Dr. Reginald Clark from the Educational faculty. One of the professors in the department,

11  Dr. Philip Dreyer, PhD (hereinafter, "Dr. Dreyer") who was accused of making the discriminatory

12  remark: "I don't know how I would feel working on a permanent base [sic] with a black man" went

13  on to become the Provost and Vice President for Academic Affairs (2002-2005) at Defendant CGU

14  and later on to be the Dean of the School of Education Studies (2005-2007). It is worthy to note that

15  Provost Adams, APT Chair Dr. Poplin, and Dr. Dreyer are all from the Education faculty at

16  Defendant CGU.

17      39.     Plaintiff enjoy's the full support of the faculty members at the School of Religion and

18  the student body.

19      40.     From approximately March 1, 2012 and continuing to the present, Plaintiff has been

20  discriminated against on account of his Religion and/or National Origin, subjected to an hostile work

21  environment on account of his Religion  and/or National Origin by the actions and comments of

22  Defendants, CGU, and, Does 1-25, and each of them.

23      41.     At all times mentioned herein Defendants, CGU, and Does 1-25, and each of them,

24  engaged in a continuing course of unlawful employment discrimination against Plaintiff, including

25  but not limited to, differential treatment by Defendants, CGU, and Does 1-25, in violation of the

26  FEHA; Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e et seq.; 42 U.S.C. §1981;

27  and/or threatening to terminate Plaintiff's employment because of Plaintiff's Religion and/or

28  National Origin employment practices forbidden by the FEHA; Title VII of the Civil Rights Act of

EXHIBIT    3

PAGE    19

1964, 42 U.S.C., § 2000e et seq.; 42 U.S.C. §1981; including, but not limited to, the following:

a.      On or about March 1, 2012, Defendant CGU's APT Committee notified Plaintiff that it had recommended to Provost Adams that the Plaintiff re-apply for tenure in two or three years and on or about September 21, 2012, Defendant CGU's Provost, CGU's President, and the Board of Trustees collectively decided not to grant tenure to Plaintiff and disregarded the recommendation of APT for tenure deferral.

b.      From and after March 1, 2012, and continuing, Plaintiff complained about and/or opposed employment practices forbidden by the FEHA, Title VII of the Civil Rights Act of 1964, 42 U.S.C., §2000e et seq.; 42 U.S.C. §1981.

c.      From and after March 1, 2012, and continuing, Defendants CGU, Does 1 through 25, and each of them, failed and refused to take all reasonable steps required by Cal. Govt. Code §12940(j)(1) and 2 Cal. Code Regs. §7287.6(b)(1)(A)(2)-(3) to prevent such discrimination, and/or such harassment, and/or such retaliation, and/or Plaintiff's termination from occurring; and

d.      At all times herein mentioned, Defendants CGU, Does 1 through 25, and each of them, engaged in a continuing course of discrimination, and/or retaliation against Plaintiff for his opposition to defendant's practices in violation of the FEHA, Title VII of the Civil Rights Act of 1964, 42 U.S.C., §2000e et seq.; 42 U.S.C., §1981; as described herein.

42.     On or about November 6, 2012, Plaintiff filed a Complaint of Discrimination with the California Department of Fair Employment and Housing ("DFEH") charging Defendant CGU with discrimination and/or retaliation, and/or harassment in violation of Plaintiff civil rights as an employee. On or about November 6, 2012 the DFEH notified Plaintiff of his right to sue which has entitled Plaintiff to file this civil action in the Superior Court of the State of California within one (1) year of the date of the notice of right to sue.   Accordingly, Plaintiff has exhausted his administrative remedies and Plaintiff's complaint herein is timely filed.

## FIRST CAUSE OF ACTION

(Religious, and/or National Origin Discrimination in Violation of the FEHA Cal. Govt. C § 12940(a) Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e et seq.; 42 U.S.C §1981;)

43.     Plaintiff incorporates Paragraphs 1-42 of his general allegations and by this reference

EXHIBIT  3

PAGE  20

1    makes them a part hereof.

2        44.    Defendant CGU is, and at all times herein mentioned was, an employer within the

3    meaning of *Cal. Govt. Code* §12926(d), employing five (5) or more persons.  At all times herein

4    mentioned, *Cal. Govt. Code* §§12900 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C.,

5    § 2000e *et seq.*, 42 U.S.C. §1981, were in full force and effect and were binding on Defendants

6    CGU, Does 1-25, and each of them.  At all times herein mentioned, *Cal. Govt. Code* §12940(a) Title

7    VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e *et seq.*, 42 U.S.C. §1981, was in full force

8    and effect and was binding upon Defendants CGU, Does 1-25, and each of them.  Among other

9    things, *Cal. Govt. Code* §12940(a) required Defendants  CGU, Does 1-25, and each of them, to

10   refrain from discriminating against and/or harassing  Plaintiff on the basis of his Religion and/or

11   National Origin.  Within the time provided by law, Plaintiff filed a complaint with the California

12   Department of Fair Employment and Housing, in full compliance with these sections, and has

13   received a right to sue letter.

14       45.    During the course of Plaintiff's employment, Defendants CGU, Does 1-25, and each

15   of them, made numerous discriminatory remarks on the basis of Plaintiff's Religion and/or National

16   Origin  maintaining a continuing policy, practice, conduct, and/or usage of disparate treatment

17   including, but not limited to, the following:

18           a.     Subjecting Plaintiff to differential standards of conduct, and/or job

19   performance, in part, because of Plaintiff's Religion and/or National Origin;

20           b.     Failing and refusing to follow Defendant's promotion policies or to apply the

21   same promotion practices to Plaintiff that it provides to other employees, in part, because of

22   Plaintiff's Religion and/or National Origin;

23           c.     Failing and refusing to promote Plaintiff because of Plaintiff's Religion,

24   and/or National Origin;

25           d.     Failing and refusing to take affirmative action to correct the effects of the

26   discriminatory policies and practices complained of herein;

27           e.     Failing and refusing to take disciplinary action against employees

28   discriminating, harassing and/or retaliating against Plaintiff and

---

11

Complaint For Damages Employment Discrimination

EXHIBIT ___3___

PAGE ___21___

f. Plaintiff's terminal year will end on or about June 30, 2013.

46. At all times herein mentioned, Defendants CGU, Does 1-25, and each of them, knew of and participated in the policies, practices, conduct, and/or usages of unlawful Religious and/or National Origin discrimination and have knowingly aided, abetted, incited, participated in, compelled, coerced, encouraged, supported, and/or acquiesced in said policies, practices, conduct and/or usages complained of herein.

47. The effect of the policies, practices, conduct and/or usages pursued by Defendants CGU, Does 1-25, and each of them, have been to limit, segregate, and discriminate against Plaintiff in ways which has jeopardized Plaintiff's career, depriving Plaintiff of further promotional opportunities, and will in the future jeopardize Plaintiff's career, depriving Plaintiff of future promotional opportunities and otherwise adversely effecting Plaintiff's status as employee in part because of Plaintiff's Religious and/or National Origin all in violation of Cal. Govt. Code §§12940(a)Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e et seq.; 42 U.S.C. §1981;.

48. As a further result of the conduct of Defendants CGU, Does 1-25, and each of them, Plaintiff will be deprived of income in the form of wages, prospective retirement benefits, future wages, seniority, and other benefits due Plaintiff as an employee because of Plaintiff's National and Gender in a sum in excess of $50,000, according to proof at trial.

49. As a proximate result of the conduct of Defendants CGU, Does 1-25, and each of them, including the unlawful policies, practices, conduct, and usage of Defendants, and each of them, Plaintiff has suffered and will continue to suffer embarrassment, humiliation and, loss of reputation in academy all to Plaintiff's damage in a sum according to proof at trial.

50. Defendants CGU, Does 1-25, and each of them, committed the acts alleged herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, Defendants, and each of their despicable conduct was carried out in conscious disregard of Plaintiff's rights. As a result of CGU, and Does 1-25, and each of their, malicious, fraudulent and oppressive conduct, Plaintiff is entitled to recover punitive damages in an amount commensurate with Defendants and each of their wealth.

---

12

Complaint For Damages Employment Discrimination

**EXHIBIT** 3

**PAGE** 22

51.    By reason of the conduct of Defendants CGU, and Does 1-25, and each of them, Plaintiff has necessarily retained an attorney to prosecute this action. Plaintiff is therefore entitled to reasonable attorney fees and litigation expenses incurred in bringing this action. Pursuant to *Cal. Govt. Code* §12965(b), Plaintiff requests the award of reasonable attorneys fees and litigation expenses against Defendants CGU, and Does 1-25, and each of them.

## SECOND CAUSE OF ACTION

[For Wrongful Termination in Violation of Public Policy of the FEHA *Cal. Govt. C.* §12940(a)Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e et seq.; 42 U.S C. §1981;]

52.    The allegations of Paragraphs 1-51 are re-alleged and incorporated herein by reference.

53.    At all times  mentioned in this complaint, the FEHA *Cal. Govt. C.* § 12940(a) Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e *et seq.*; 42 U.S.C. §1981; and all other pertinent rules and regulations promulgated pursuant thereto, and as otherwise provided by Federal and State laws and regulations, were in full force and effect and were binding upon Defendants CGU, Does 1-25, and each of them. These statutory provisions required Defendants CGU, and Does 1-25, and each of them, to refrain from terminating, discriminating, harassing, and/or retaliating against Plaintiff for protesting, questioning and/or reporting conduct out of compliance with of the FEHA *Cal. Govt. C.* § 12940(a) Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e *et seq.*; 42 U.S.C. §1981;Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e *et seq.*; 42 U.S.C. §1981; and all other pertinent rules and regulations promulgated pursuant thereto, and as otherwise provided by Federal and State laws and regulations.

54.    On or about March 2012, after Plaintiff reported Defendants CGU, and Does 1-25, and each of their, conduct as described in paragraphs 1-51 herein which are incorporated by this reference hereat, Defendant CGU notified Plaintiff that his employment would terminate on June 30, 2013.

55.    As a direct, foreseeable, and proximate result of Defendants CGU, and Does 1-25, and each of their outrageous conduct, Plaintiff has lost income, employment, and career opportunities, and has suffered other economic loss in an amount that exceeds $50,000, the precise

EXHIBIT  3

PAGE  23

1  amount of which will be proved at trial.

2  56.   As a proximate result of Defendants CGU, and Does 1-25, and each of their

3  outrageous conduct as alleged herein, Plaintiff has suffered and continues to suffer anxiety,

4  embarrassment, anger, loss of enjoyment of life, humiliation, and loss of reputation in an amount that

5  be proved at trial.

6  57.   Defendants, CGU, and Does 1-25, and each of them, committed the acts alleged

7  herein maliciously, fraudulently, and oppressively, and with the wrongful intention of injuring

8  Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively,

9  Defendants CGU, and Does 1-25, and each of their despicable conduct was carried out by a

10  managing agent, officer, director, or a managing agent of Defendants, CGU, and Does 1-25, and each

11  of them, had advance knowledge of the unfitness of its decision-maker and employed him/her with

12  a conscious disregard of Plaintiff's rights and/or authorized and/or ratified his conduct. As a result

13  of Defendants conduct, Plaintiff is entitled to recover punitive damages in an amount commensurate

14  with each Defendants CGU, and Does 1-25, and each of their wealth.

15  WHEREFORE, Plaintiff seeks judgment against Defendants, CGU, and Does 1-25, and each

16  of them, as follows:

17  1.   For all actual, consequential, and incidental losses, including but not limited to loss

18  of income and benefits, according to proof, together with prejudgment interest pursuant to *Cal. Civ.*

19  *Code* §§3287, 3288 and/or 3336;

20  2.   For general damages according to proof;

21  3.   For punitive damages in a sum sufficient to make an example of Defendants, and each

22  of them, to punish Defendants, and each of them, and/or to deter other and future conduct of a

23  similar nature;

24  4.   For attorneys fees pursuant to *Cal. Govt Code* §12965(b); and/or, *Cal. Lab. Code*

25  §218.5;

26  5.   For costs of suit, and

27  6.   For such other and further relief as the Court deems proper.

28  ///

EXHIBIT __3__

PAGE __24__

1                               DEMAND FOR JURY TRIAL

2          Plaintiff hereby demands a jury in the trial of this matter.

3

4

5 DATED: December 20, 2012          Law Offices of

6                          Donald K. Hufstader

7                          By:

8                          Donald K. Hufstader
                           Attorney for Plaintiff

9                          Hamid Mavani, PhD

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint For Damages Employment Discrimination

EXHIBIT   3

PAGE   25

NOTICE SENT TO:

HUFSTADER, DONALD K.
500 WEST SANTA ANA BLVD. SUITE 955
SANTA ANA            CA  92701-4511

LOS ANGELES SUPERIOR COURT

FILE STAMP

**DEC 27 2012**

JOHN A. CLARKE, CLERK

BY S. CERDA, DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| HAMID MAVANI, PHD | CASE NUMBER |
| Plaintiff(s), | KC065318 |
| VS. | |
| CLAREMONT GRADUATE UNIVERSITY | **NOTICE OF CASE MANAGEMENT CONFERENCE** |
| Defendant(s). | |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for May 30, 2013  at   8:30 am  in  Dept. EA O at 400 Civic Center Plaza, Pomona, California, 91766.

NOTICE TO DEFENDANT:     THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE
                         DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 **calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date: December 27, 2012                                        _____
                                                                    Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

    [ ] by depositing in the United States mail at the courthouse in Pomona, California, one copy of the original filed herein in a separate
        sealed envelope to each address as shown above with postage thereon fully prepaid.

    [ ] by personally giving the party notice upon filing the complaint.

Date: December 27, 2012

                                                    John A. Clarke, Executive Officer/Clerk

                                        by _____, Deputy Clerk
                                                            S. Cerda

ACIV 132 (Rev 09/07)                                    Cal. Rules of Court, rule 3.720-3.730
LASC Approved 10-03                                     LASC Local Rules, Chapter Seven

EXHIBIT ____4____

PAGE ____26____

1  Jonathan M. Brenner, SBN 162366
   jbrenner@sidley.com
2  Melissa K. Lee SBN 229478
   mklee@sidley.com
3  SIDLEY AUSTIN LLP
   555 West Fifth Street, Suite 4000
4  Los Angeles, California  90013
   Telephone:  (213) 896-6000
5  Facsimile:  (213) 896-6600

6  Attorneys for Defendant
   CLAREMONT GRADUATE UNIVERSITY

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF LOS ANGELES

10

11  HAMID MAVANI, PhD,                    Case No. KC065318

12              Plaintiff,               Assigned to:  Peter J. Meeka, Dept. 0

13        v.                            DEFENDANT CLAREMONT GRADUATE
                                        UNIVERSITY'S ANSWER TO
14  CLAREMONT GRADUATE UNIVERSITY;       PLAINTIFF'S UNVERIFIED COMPLAINT
    and DOES 1 through 25, Inclusive,
15                                       Complaint Filed:      December 26, 2012
              Defendants.
16

17

18

19

20

21

22

23

24

25

26

27                                                   EXHIBIT ___5___

28                                                   PAGE ___27___

A1 2651836v.1

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

TO PLAINTIFF AND HIS COUNSEL OF RECORD:

Pursuant to California Code of Civil Procedure section 431.30(d), Defendant Claremont Graduate University ("CGU") hereby answers Plaintiff Hamid Mavani, PhD's ("Plaintiff") unverified Complaint ("Complaint") as follows:

### GENERAL DENIAL

CGU denies generally and specifically each and every allegation contained in the Complaint, and further denies that Plaintiff was, is, or will be damaged in any sum, or at all, as a result of any act or omission committed by, imputed to, or otherwise attributable to CGU, and alleges that Plaintiff is not entitled to any relief whatsoever.

### AFFIRMATIVE DEFENSES

By setting forth the following "affirmative defenses" in response to the Complaint, CGU does not concede that it bears the burden of proof or persuasion on any of them.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim Upon Which Relief Can Be Granted)

The Complaint, and each and every purported cause of action alleged therein, fails to set forth sufficient facts to constitute any claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

### (Legitimate, Non-Discriminatory Basis for Conduct)

CGU denies that it engaged in the conduct attributed to it by Plaintiff. However, if it is determined that the conduct alleged is legally attributable to CGU, then CGU alleges that the conduct was not unlawful inasmuch as the conduct was reasonably and properly based on legitimate business reasons and non-discriminatory factors.

EXHIBIT ___5___

PAGE ___28___

A1 2651836v.1

## THIRD AFFIRMATIVE DEFENSE

### (Reasonableness and Good Faith)

CGU acted reasonably and in good faith at all times material herein, based on all relevant facts and circumstances known to it at the time it so acted.  Accordingly, Plaintiff is barred from any recovery in this action.

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Administrative Remedies)

CGU is informed and believes, and based upon such information and belief, alleges that any recovery on Plaintiff's Complaint is barred on the grounds that Plaintiff failed to properly and/or timely exhaust his administrative remedies before filing suit.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Internal Remedies)

CGU is informed and believes and, based on such information and belief, alleges that Plaintiff's causes of action, and each of them, are barred on the grounds that Plaintiff failed to utilize CGU's internal grievance process.

## SIXTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

The Complaint, and each and every purported cause of action alleged therein, is barred by the applicable statutes of limitation, including without limitation to, Government Code §§ 12960 and 12965 and Code of Civil Procedure §§ 338, 339 and 340.

EXHIBIT _____ 5 _____

PAGE _____ 29 _____

2651836v.1

## SEVENTH AFFIRMATIVE DEFENSE

### (Conduct Not Contrary To Public Policy)

Any alleged wrongful conduct by CGU does not constitute conduct in contravention of the public policy of the State of California.  Accordingly, neither the Complaint, nor any purported cause of action asserted therein, constitutes a cause of action against CGU.

## EIGHTH AFFIRMATIVE DEFENSE

### (Justification)

CGU's conduct neither violated an express statutory objective nor undermined a firmly established principle of public policy, and was otherwise justified and in good faith.

## NINTH  AFFIRMATIVE DEFENSE

### (Privilege)

CGU is informed and believes, and based upon such information and belief, alleges that any recovery on Plaintiff's Complaint is barred on the grounds that CGU's acts were privileged.

## TENTH AFFIRMATIVE DEFENSE

### (No Knowledge)

CGU is informed and believes, and based thereon alleges, that Plaintiff is barred, in part or whole, from recovery because Plaintiff failed to notify CGU of the alleged acts of discrimination, and therefore, CGU had no knowledge of the acts or incidents which Plaintiff alleges in his Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Workers' Compensation Exclusive Remedy)

The Complaint is barred in whole or in part because the exclusive remedy for the damages asserted by Plaintiff is provided by the California Workers' Compensation Act, California

EXHIBIT __5__

PAGE __30__

\1 2651836v.1

1  Labor Code Section 3200, *et seq*.  Additionally, CGU's alleged conduct neither contravened

2  fundamental public policy nor exceeded the risks inherent in the employment relationship.

3  Furthermore, all acts alleged in Plaintiff's Complaint, if they occurred, were incidental to Plaintiff's

4  employment relationship with CGU.  Finally, CGU is entitled to a set-off of any recovery Plaintiff

5  may receive from a Workers' Compensation action.  CGU denies any and all liability to Plaintiff.

6

7  ## TWELFTH AFFIRMATIVE DEFENSE

8  ### (Estoppel)

9  CGU is informed and believes, and based thereon allege, that by virtue of Plaintiff's

10  action or inaction, he is estopped as to any and all rights he may have under the facts alleged in the

11  Complaint and each and every purported cause of action contained therein.

12

13  ## THIRTEENTH AFFIRMATIVE DEFENSE

14  ### (Unclean Hands)

15  CGU is informed and believes, and based thereon alleges, that Plaintiff is barred, in

16  part or whole, from recovery of any damages, based upon the doctrine of unclean hands.

17

18  ## FOURTEENTH AFFIRMATIVE DEFENSE

19  ### (Waiver)

20  CGU is informed and believes, and based thereon alleges, that by his conduct,

21  Plaintiff has waived any right to recover any relief by his Complaint, or any purported cause of

22  action alleged therein.

23

24  ## FIFTEENTH AFFIRMATIVE DEFENSE

25  ### (Same Action Regardless of Protected Status or Conduct)

26  CGU denies that it unlawfully discriminated against Plaintiff.  Assuming, arguendo,

27  that Plaintiff proves CGU relied upon an illegal motivation, it would have taken the same action

28  even if it had not relied upon the illegal ground.

EXHIBIT ___6___

PAGE ___31___

2651836v.1

5

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

## SIXTEENTH AFFIRMATIVE DEFENSE

### (No Causation)

Plaintiff's alleged damages, if any, were caused by circumstances and conduct other than that alleged in the Complaint.  CGU denies any and all liability to Plaintiff.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No Damages)

Plaintiff has not suffered any damages as a result of the conduct alleged in the Complaint.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Mitigation)

CGU is informed and believes, and based thereon alleges, that Plaintiff has mitigated and/or failed to mitigate his damages, if any, and therefore any damages awarded to him must be reduced or eliminated to the extent by which such damages have and/or could have been avoided by a reasonable effort to mitigate the same.

## NINETEENTH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

CGU is informed and believes, and based thereon alleges, that Plaintiff is barred, in part or total, from recovery of damages, based upon the doctrine of after-acquired evidence.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Avoidable Consequences Doctrine)

CGU denies that it acted improperly and further denies that Plaintiff incurred any harm.  However, assuming *arguendo* that Plaintiff was harmed, Plaintiff unreasonably failed to take actions that would have prevented some or all of the harm that Plaintiff allegedly suffered.

EXHIBIT  5

PAGE  32

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

1 2651836v.1

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (ERISA Preemption)

Damages sought for loss of employment benefits are pre-empted by the Employee Retirement Income Security Act of 1974.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Punitive Damages)

The Complaint, and each and every purported cause of action alleged therein, fails to allege facts sufficient to allow recovery of punitive or exemplary damages from CGU.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Unconstitutionality of Punitive Damages)

An award of punitive damages in this action would violate CGU's due process and equal protection rights under the United States Constitution and the California Constitution.

## RESERVATION OF DEFENSES

CGU alleges that, due to CGU's lack of information as to the matters set forth in the Complaint, CGU has insufficient knowledge of information on which to form a belief as to whether it has additional, as yet unstated, affirmative defenses available, and CGU therefore reserves the right to assert such additional defenses in the event discovery indicates that they are proper.

### PRAYER

WHEREFORE, CGU prays as follows:

1.    Plaintiff take nothing by reason of his Complaint and judgment be entered in favor of CGU;

2.    Plaintiff's prayer for all compensatory damages, interest, expenses, special damages, as well as attorneys' fees and costs be denied;

EXHIBIT   5

PAGE   33

2651836v.1

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

3.   CGU be awarded its costs of suit and attorneys' fees incurred herein; and,

4.   For such other and further relief as the Court deems just and proper.

Dated: February 6, 2013

_____

Melissa K. Lee
Attorneys for Defendant
CLAREMONT GRADUATE UNIVERSITY

EXHIBIT ___5___

PAGE ___34___

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

2651836v.1